Incorporated. Arguments not to exceed 15 minutes per side. Mr. Steele for the appellant. May it please the court, my name is John Steele. I represent Ricky Edwards in this case, which he has brought pursuant to the Federal Employer's Liability Act against his employer CSX Transportation for on-the-job injuries he suffered. The issue presented for this court is whether the district court erred when it ruled that an unsanitary toilet compartment on a locomotive is not in fact a breach of 49 C.F.R. 229.139 of the Locomotive Inspection Act so as to give rise to responsibility for money damages to Mr. Edwards under the F.E.L.A. We contend that the district court's ruling is in error and in direct contradiction of first, the clear F.E.L.A. provision provides, quote, the sanitation compartment of each lead locomotive in use shall be sanitary. It goes on to explain how you satisfy that, don't you think? Not 139 A. No, but the regs, and then the interpretations of the regs. Correct, under 137 C. The argument the regs are inconsistent with the statute. No, Your Honor, the argument is that the regs are absolutely correct as it applies to 137 C. and that they're also correct as they apply to 139 A. But let me just get in here. So there's been interpretation of the regulations, and that's really where I want to take you. I understand the argument that A supports your position, and I understand the argument that C may be interpreted as limiting what the duty might be, even though A says you must operate sanitary bathrooms in a lead car. But the Federal Railroad Administration has interpreted the regulations consistent with what your opponent has argued, that C means that the duty only arises after, the only duty is to inspect, and that has to be done daily. And so when they inspect, of course, they have to make sure that it's sanitary from that point, at that point. But if they become unsanitary over the next day or so, that there's no obligation at all, regardless of how unsanitary it may become. That's the argument, I think, on the other side. But isn't there really a law of longstanding that you give special deference to an agency's interpretation of its own regulations? How do you get around that? Certainly, Your Honor. Thank you for the question. Under 137C, it must be looked at in context. 137A deals with the equipment that must be included in the compartment itself. B deals with the exceptions to that. C of 137 deals with, okay, if you find that a toilet is either unsanitary or defective, that is a violation of A or B provisions before, at the time of daily inspection, then there But you can do these maneuvers to still use that locomotive. In essence, it is, okay, if you find a railroad, then you have the ability to maneuver your consist around in order to proceed with a defective or unsanitary locomotive. That's true. That's an operational issue that the FRA has said under their fining obligation, not under the FELA, but under their fining obligation, that they may not impose a fine if, after they perform that inspection, they find that there's been a violation. How do you interpret this language from the Federal Railroad Administration, the duty to remedy an unsanitary condition arises only at the daily inspection? Correct, Your Honor. How do you interpret it? Because I interpret that to be read in conjunction with 139A, which says that the sanitation compartment of each locomotive must be sanitary. And if you look to their comments regarding 139A, not 137, the statute at issue, which is contained in the same Federal Registry, Your Honor is looking at on page 16045, it says, 139 establishes servicing standards to ensure that sanitation compartments in occupied locomotives, which is what we had, are not unsanitary or defective. Paragraph A states that the railroad must service the sanitation compartments of lead locomotives in use, which is a term of art in the railroad, which means they're not in service, are being inspected, are blue flagged, protected. So if an in use locomotive must be insured so they are sanitary. This requirement, 139A, means that the floors, toilet facility, and washing facility must be free of trash and waste. It is reasonable to your point, Your Honor, they note, to expect that as a locomotive is used, some amount of dust and trash would accumulate. However, in order to meet the requirements of paragraph A of 139, the trash must be removed at regular intervals and used soiled paper products or human waste may not be present on the floor. And that is a continuing obligation that has been recognized by many, many courts. How would this case of work, you know, we know your client showed up for work not feeling well and let's say what happened was a little different. The bathroom's clean when he arrives to work. He gets sick. He uses the bathroom. In getting sick, he messes the whole bathroom up. He doesn't have time to clean it because he's got to run the train. He goes back. He now feels sick again. And this time he doesn't go back to the bathroom. Now it's just like this case. He does just what happens. What would your answer be there? Excellent question. The answer there is then the railroad would have available a defense that it does not have in this case where he does not self-create. And that is they would have the defense of sole proximate cause as a defense to a locomotive inspection act violation. That does not exist in this case because you can't be contributory negligence if there's a violation. But you can be the sole proximate cause. There are cases where a plaintiff puts down his own luggage and then trips over his own luggage. Well, he is the sole proximate cause of his injuries. Now I switch the hypothetical. There's another engineer. I mean it just happens. You run into the problem that the district court had and I still don't see the answer in your brief of how you avoid, how the train, the automotive company avoids the problem of having to have a full-time inspector. Sure. Well, your honor, it's because of the nature of the statutory compliance. For example. So the answer they do. They have a full-time obligation continuing absolute and will be held strictly liable if the locomotive parts or appurtenances violate those sections. For example, 119C deals with the locomotive has an obligation, the railroad has an obligation to keep the locomotive walkways, floors and passageways free of oil and debris so as to avoid slipping or tripping hazards. Case after case is recognized that that is an absolute and continuing liability. You don't have to identify when the oil got there. You don't have to identify the source of the oil. All you have to show is at the time that the employee was injured that the oil, debris or waste was present on the floor at the time and there's a violation of the statute. So this regulatory scheme is exactly the same as that one? Absolutely. It's containing the same part. 229 part, excuse me, part 229. 119 deals with, okay, we can go through them. Seats. 119A deals with seats. How seats must be not bend. You can do this if you think it's going to help us, but if you think you can do it to show us you know it, you can't do it. No, unfortunately I live in this world, I apologize, your honor. But it is part 229, 119A, which is under the Locomotive Inspection Act, part of this exact same regulatory scheme. The case on point is called Kernan. It's cited in our brief. Also there are cases that have dealt with this and I can tell you that, let me out of order here just a little bit, specifically for that one. Do you challenge the application of seminal rock deference? You accept that doctrine, the idea that it's almost complete deference to an agency's interpretation of its own regulations. You just say it's either incorrect or it's trumped by other provisions? I think it's both explainable in terms of how they go about their business as well as you have to look at 137 in conjunction with 139. Understand that the FRA's viewpoint is how do we impose fines? How can we... I just want to make sure you're answering the question I'm asking. Yes, sir. The question I'm asking, do you know what I mean when I say seminal rock and our deference A-U-E-R? Do you know what I mean? No, sir. No or yes? No, sir. Okay. Well, those are the cases that stand for the proposition that the agency, federal agencies get considerable deference when it comes to interpreting their own regulations. So CSX has relied on this doctrine. Right. Okay? So I'm saying you're not challenging the existence of that doctrine. You're challenging its application here. Am I getting that right? And the actual reading of what they have actually said and the import as to what they're... What they've said. You're not challenging the doctrine. No, you're not. No. Absolutely not. Am I correct that your claim is limited to statutory violation? Correct. You don't allege a common law violation? Well, we allege one. The FELA is set up to where you have to allege... He can only recover under the FELA. It's set up as the vehicle to do that. The LIA is regarded as an amendment to the FELA. And so we allege FELA, but it is really we're traveling under the statutory constructs of the Locomotive Inspection Act. So you're not bringing in a common law negligence? Correct. Could you have brought a common law claim? Well, we've pleaded in our case, but we've not pursued that because we have not been able to show who actually fouled the toilet or that the railroad had actual notice of it prior to that date. Right. I mean, we're limited to the negligent per se claim that you... Right, which under the LIA is both general in the sense that the railroad has an obligation to keep their locomotive in general good working shape as stated by the LIA, as well as a specific statute. The daily inspection that is at issue is not really a daily inspection. It must occur within 48 hours, basically. So anywhere from four to six crews could be on a locomotive before a daily inspection occurs. And what 139A recognizes, as well as 139C, is that the railroad has a continuing obligation to maintain its locomotive in accord, to be sanitary, in accord with 139A and C. Oh, go ahead. No, I was just going to say, so you're saying that this obligation is not unlike other obligations that the railroad would have in regard to trains or locomotives that they operate. Absolutely correct, Your Honor. Under 119, again, I don't want to... Horns, bells, lights, all those. But that's what you're saying. Exactly. And I asked you before, it says the duty to remedy an unsanitary condition arises only at the daily inspection. I think you explained that, but very quickly, explain that again. Sure. Very quickly. The duty to remedy, under the FRA constructs of when they fine the railroad, and this is, if you look at the Federal Register that's taken out, it sets forth the fining schedules. That's what that text is about. How can we, the FRA, fine the railroad for these obligations? That is different than the obligations that a railroad has to its employee under the same provisions. And I would look, again, I'll find the case for you real quick, looking at... We cite in our brief the Withrow case, the Aldridge case, the Reid case out of the Northern District of Ohio, all have said that, again, going back to my oil on the floor case, that if an employee does not have to prove the source of the oil or when it appeared, he prevails if he proves only that the oil was present on the walkway and constituted a slipping hazard. It is a strict liability statute. In essence, if we look back to the purpose of the FELA... Let me ask you, is there a similar provision, an interpretation by the railroad administration in regard to the oil and so forth, that the duty arises only at inspection or something like that? Is there a similar provision? I would direct your honor, and I'll be glad to pull it up or something at the record, if you look at the FRA compliance manual, which has been cited. I do not know of anything in the Federal Registry, but if you look at the FRA compliance manual with regard to this issue, it talks about a very different type of way that they can fine railroads for this violation versus what has been held the railroad to be responsible for under the FELA. Two very different standards. For example, in the compliance manual, it says as to seats that it has to be either... I see your time is up. I apologize. No, complete this. I want to make sure you've answered Judge Oliver's question, but then the rest will be for rebuttal. Thank you. Simply as to seats under the FRA compliance manual, it has the same limiting type of we can fine under only these circumstances, but the case law is much broader and says that seats can be bent and still violate the Locomotive Inspection Act. Thank you. Thank you. Mr. Netter. Good morning, Your Honors. May it please the Court. Mr. Edwards can prevail in this case only if he can establish that the Federal Railroad Administration, through its regulations, promulgated a requirement that imposes on railroads a perpetual duty of toilet cleanliness. But there's no need to speculate about what the Federal Railroad Administration was intending to do, because in the final rule that created the regulations that we're discussing today, there was a preamble that said in entirely clear terms that a railroad has no obligation to clean a toilet that becomes dirty between the daily inspections. Now my friend on the other side was suggesting that the language that the FRA has used has arisen only in the context of fines, and I want to be very clear this morning that that's not correct. That's not true. That in promulgating this regulation in particular, in creating the standard on which Mr. Edwards is relying, the FRA said in the proposed rule, and again the final rule, that the railroad's only obligation is to clean a toilet when it comes around for its daily inspection. So how do you respond to his point that, well, you know, this regime is analogous to keeping the floors free of oil, and that that really is 24-7? Is he right about the premise about this other set of regulations in 119, I think it is? I think he is right about the premise, and I can't claim the overall railroad expertise of my adversary. But these are very different situations, and – Is it really that different? Really? I mean, I could see someone saying, no, it's – you've got a duty to keep this stuff clean throughout, because in both settings, people could get hurt. Right. The difference, however, is that a railroad – a locomotive engine can be designed so that oil does not leak onto the floor, and procedures can be put into place such that those regulations are to be satisfied. Meanwhile, just by the nature of what a toilet does and what its function is on a railroad, it would be impossible to prophylactically satisfy that regulation at all times. And the key distinction between the oil case and the toilet case is that the FRA has said different things in these contexts. The FRA did not say in the context of promulgating regulations about keeping the floors clean that if the floor becomes dirty between daily inspections, you can leave it dirty all day. That's not what the rules say. I don't know 119 either, so I don't apologize if you don't know it to the same degree your friend does. But I'm curious, are there differences in the statute, or is what's really going on? I know it's a fair thing to say that the statutory language is pretty similar in both settings, but the regs and interpretation of the regs have just been construed differently. Is that what's going on? Let me take a step back and give a clarification here, because we're not really talking about an operating statute in any respect. So the statute delegates substantial authority to the FRA to promulgate safety regulations. So we're not in a universe in which the FRA is saying, okay, Congress has told us that the toilets need to be clean and that the floors need to be clean, and we're going to interpret this through our regulations. What the FRA is doing here is actually promulgating substantive regulations that are sometimes described as being the statute for purposes of the LIA, but are actually just regulations. So it is... But the word, the sanitary and use, those are statutory. Am I wrong about that? Yes, those appear in Section 139A of the regulations. Oh, they're not in the statute? No, they're in the regulations. Well, I've made the very mistake you're talking about. Right. And the language in use, this is another thing that the other side relies on considerably. Let me answer my last question, though. I want you to answer. So we're talking about the regs now. Is the regulatory regime the same in the floor, bathroom setting, and all that's different is the FRA's interpretation of them? No. Okay, go ahead. The language is different, because in the oil and the floor context, you don't have the equivalent of Section 137 that says, that references the fact that you're doing this inspection on a daily basis. In 139A, the subheading of that section is servicing requirements. It's explaining how you service the locomotive in order to satisfy the general requirement, which is in Section 137A, that you provide a sanitary toilet facility. Is it quite possible that you could have an obligation to keep something sanitary and also have a regulation that says at least you shall be required to clean once a day and have some obligations there if you don't? It's definitely apart from the fact that you have an obligation to the workers if a person is injured by, you know, by an unsanitary bathroom. It's theoretically possible that an agency could promulgate a set of rules that would work in that fashion, but that's not what happens here. And I think the clearest example of that is what the FRA did in Sections 137C and 137D. So 137C explains to the railroad what its options are if, at the time of the daily inspection, it determines that the toilet facility is not sanitary and it can't make it clean. And what that provision says is, okay, here are five requirements, and if these five requirements are satisfied, then okay, fine. You can keep the toilet dirty until the train travels through the next station where you can clean it. Now, it wouldn't make any sense at all for there to be a perpetual requirement that the toilet must always be clean and then to have an exception that applies only at the time when it is likeliest that you'd be able to clean the toilet, when it's being inspected, when you're at an actual facility. And for there to be no relief for the railroad whatsoever when the train is moving, when there would be nothing that could be done to remedy the situation. Only obligation, you say, is to clean it, inspect it within 48 hours, because you've got, I mean, it's a daily inspection. So if you took the earliest point in one day and the latest point in the other day, that's all you have to do. And even if you walk through it and you see that it's a mess and it's unsanitary and you absolutely know that, there's no obligation to anyone. That's right. That's what the regulations say. And it is a calendar day. Well, that's what we try to figure out. Right. Well, and in fairness, what I'm referring to is the fact that in promulgating this regulation, that the Federal Railroad Administration says with remarkable clarity what it is requiring a railroad to do and what it's not requiring a railroad to do. These are minimum servicing requirements. And the potential liability that is imposed on a railroad for violating one of these regulations is substantial, because as my adversary has explained, this creates basically a strict liability regime. Well, there's a lot of language. You must admit, hey, the sanitation compartment of each lead locomotive in use shall be sanitary. All components required shall be present, operators intended. Water shall be present, sufficient quantity to prevent flushing. But you're saying that C modifies all that so that it's not shall or it shall be right after inspection. That's what you're saying. Right. Because the subtitle of that, of 139, is servicing requirements. And in the preamble, the agency describes 139 as providing the minimum servicing requirements to be completed at the time of the daily inspection. So if we're looking at this from the mode of statutory or regulatory interpretation, the first question is, is there ambiguity in the regulation? And the Supreme Court has made clear on many occasions that to determine whether or not a statute or regulation is ambiguous, you have to look at it in context of the entire regulation. Here, 137 and 139 were promulgated at the same time. And we have the header of 139 that explains that 139 is providing only the servicing requirements. Our position is that it's impossible to read 139 to mean that there's a perpetual obligation at all. But at a very minimum, there is some ambiguity as to the timeline that is imposed by the cleanliness requirements of 139. Once you get into the universe in which there's any ambiguity, we ask for Seminole Rock, our deference as to what the agency said. And there are some circumstances in which courts have been skeptical of granting our deference to a litigation position of an agency or something like that. This would seem, however, to be the strongest possible case for deferring to an agency's interpretation of its own regulations. Is this case the strongest one possible? The strongest possible case because the agency at the time it was promulgating this regulation explained what it meant and explained the ambiguity that we're confronting right here. And the agency has also continued to employ that exact same interpretation in the regulatory guidance that is issued since the promulgation of these particular rules. Do we have any cases at all on the specific provisions here in terms of cases having interpreted what we're asked to consider? Have you seen any cases that specifically on point factually? No. Well, there have been three prior unsanitary toilet cases or appeals that have come up to this court. And these are mentioned in the briefing. There's a Shakaris case that came up twice, and this case was up on an earlier appeal. In each of those cases, however, the premise of the dispute was that the toilet was unsanitary and the questions revolved around Thela's proximate causation standards. So the court has not, no court to our knowledge, has interpreted the timing question with respect to a railroad's obligations under 137 and 139. The first time around, I take it this argument, you probably don't know, this argument wasn't made because it was a different, I mean, and they thought there, I guess your client thought there was a good possibility it might be affirmed on the trial court's granting of summary judgment. Well, I was counsel on the briefs in that case, so I can't explain it with a little greater detail, which is that- This argument wasn't raised. The argument was not raised originally in the district court. We moved for summary judgment on the negligence theory, saying that the state of the toilet was unconnected to the ultimate injuries that- The only reason I ask you that, usually this is the clearest case that can be made or found on this issue. So my question was, if it's that clear, why wasn't it raised the first time around? It was. We raised it as an alternative ground for affirmance before this court the first time around. The court, however, did not reach the issue. It didn't decide it. We filed a motion for reconsideration saying, basically, we think this is a very clear issue, a very clear way to end this case, and it doesn't seem as if the court has reached it, which could be sensible in some sense because it hadn't been ruled on by the district court. So we asked for reconsideration on that basis, and reconsideration was denied without comment. So, in terms of our Seminole Rock deference, would you concede that if the agency changed its mind, and they didn't alter the regulations, but they changed the interpretation to require 24-7 clean bathrooms, would that be upheld? Our primary interpretation is that the regulation cannot be read to require perpetual cleanliness. So our position, I assume, and I don't want to get too far ahead of my skis here, would be that because the regulatory language is clear, that you wouldn't get to that point. But in this case, where we're somewhat differently situated, the agency's contemporaneous explanation coupled with the language of the statute, the heading of the statute, and frankly, the absurd outcomes that would result from a perpetual requirement as recognized by the district court here. Why would it be so absurd? I mean, you've got these other requirements that you've got to keep floors clear of debris and oil and other kinds of hazards, and someone has to look after that. And this happens in life. There are duties that we have and companies have and so forth, and they go on every day. If you violate them, then there's a consequence. Why would it be so absurd? I think it would be absurd just as a function of human nature. And given that the regulations are designed to balance both the safety needs of workers and the practical needs of a railroad trying to transport goods to consumers, that creating an obligation that would effectively impose on railroads a choice between adding a staff member to permanently monitor the toilets or exposing itself to outsized liability, that these outcomes would be inconsistent with the harm that is potentially being contemplated. The harm that a worker who has been provided with cleaning equipment himself and could have called to have the train switched if he was uncomfortable or could have cleaned the toilet himself, that his decision later not to use the toilet and then the happenstance that he fell off the train when he got sick. Going down the causation road, which is a great idea. The causation road is a very – no, but that's the reason why it would be absurd to impose on railroads the perpetual liability of needing to keep a toilet clean at all times. And I don't think, by the way, that the outcome would depend on who had made the toilet dirty, to address a question that was posed to my adversary, that if the railroad had an obligation to clean the toilet whenever it got dirty, I don't see why it would matter who it was who had gotten the toilet dirty, which just, in our view, points out the absurdity. Which way does it cut that the best thing you have here is in a preamble? Is that good, bad, neutral? Are there many Seminole Rock or our deference cases relying on preambles? I can see it cutting both ways. I don't know if I would say it's a good thing or a bad thing. We would say it's a dispositive thing, obviously. And I think that the reason for that is that ordinarily you don't get into disputes about what the regulation means if the agency has already explained to you what the regulation means. And so it's not a topic on which you would expect to see all that many precedents. Our strongest argument here, our lead argument, I would say, is that the interpretation being offered of 139A is irreconcilable with 137C and 137D. Those don't make any sense. And argument number two is that you can look at the subheading, at the title of the statutory provision to understand what it means and interpret it. But what if he comes back and says, well, no, the way this works is 139A sets the general rule and C sets some exceptions, and he might say the exceptions don't apply here. Right. We addressed that possibility in a footnote in our brief. And as I was alluding to earlier That doesn't do me much good. What's the answer? No, the answer is that such an exception wouldn't make any sense. It would be nonsense for an agency to create an exception that applies only in the circumstance where you need an exception the least. Why would the FRA have said that if a toilet gets dirty while the train is moving, you're out of luck? But if the toilet is dirty at the time when you're in a station and somebody is there inspecting it, then we're going to create some special exceptions there. So that doesn't make any sense. And at a minimum, that makes the relationship between 139A and 137C ambiguous, which entitles us to look to our It doesn't make sense. I don't know. I don't know a lot about railroads. I mean, I can see the other side of it. General rule, exceptions, you're not covered by the exception, you're back with the general rule. Right. And here we're in a circumstance where the FRA has told us over and over again that the railroad has no obligation at all to clean a toilet that becomes dirty between the daily inspections. And that, because of the clarity of that guidance coupled with the ordinary principles of statutory and regulatory interpretation, should end this case. Okay. Thank you. Thanks very much for your argument. We appreciate it. Mr. Steele, you've got a few minutes of rebuttal here. Thank you very much. I would say that this, not this timing issue, but certainly this statutory issue has been dealt with in Suzerki's twice and this case previously, all of which held flatly without any reference to timing, that an unsanitary toilet is a violation of the Locomotive Inspection Act. I would also point Do you want to respond to the thing he just ended with? We were talking about the relationship between 139A and then 37C. He was making the point that the exceptions, it's very strange to have those exceptions and then in a quite improbable setting where the train's moving, expose them to liability. So it makes some sense, doesn't it? Well, let's look at 139C, which says that in the exceptions where the railroad can move the locomotives that are outlined in 137, 139C specifically references 137 and recognizes it and says that when you have a railroad in one of the exception positions, that is either in a trailing position or in one of the exceptions outlined under 137, that locomotive shall be sanitary. And then we go to the rules as stated by the FAA regarding that specific statute, regarding 137, 139C. This requirement addresses the units that might fall within the exceptions of 137B and B1 because of the operations they're engaged in, but nonetheless possess a toilet on board. If that is the case, employees may opt to not use the toilet facility, preferring to use other facilities along the right of way, however, carriers must not expose these employees to unsanitary conditions while they are in the units. Therefore, the toilet facilities may actually be defective while the unit is occupied, but they cannot be unsanitary. I have to say I'm not totally following this. Are you making the point that 137C is a set of exceptions only to 139C? Is that the point? No, I'm sorry. I apologize, Your Honor. You're confusing me. Tell me without reading anything the basic point. 139A says that all toilet compartments must be sanitary. 139C recognizes that there are exceptions when you can use a locomotive under 137, even if it is defective or unsanitary. Okay? That's not being lead. Correct. But the comments on 139C state that does not relieve the railroad of ensuring that the carriers must not expose these employees to unsanitary conditions while they are on the units. See, maybe you're answering it, but I don't feel like you're answering his point. His point, you know, something that would help you is to say general rule is in 139A. Correct. Exceptions are in 137C. Correct. He makes the point, which makes some sense, particularly in light of the preamble, how strange to carve out these exceptions, but then leave the situation where it's oddest to impose liability still there. So I know you're trying to answer that, or I think you're trying to answer that question, but I just want to make sure that's the question you're answering. I want to try to see if I can follow your answer. Thank you. I want to make sure I'm trying to, at least, Your Honor. No different than the floors, if we go back to 119, which is the same regulatory perception. There is a general rule. If the railroad, but there are exceptions to when the railroad can move locomotives or move freight in certain conditions. What 137C dealt with was, okay, if you find it at the time of a daily inspection, we're going to let you move the locomotive under certain conditions, even if it is defective or unsanitary, okay? But that does not mean that you have shifted the risk of injury to the employee under those circumstances. In other words, what makes no sense is to say, okay, railroad, you can still move your locomotives. I don't think that's what's happened, because you still have the negligence route. I mean, that's the thing that makes this all seem to fit together. If it's negligence, per se, it makes some sense that they're going to be very careful about establishing when the railroad is automatically liable, particularly with this light causation standard, but then you still have the backup of general negligence. That seems to fit pretty well together. Well, we have two backups. We have the backup of general negligence and of the general requirements under the LIA of keeping the appurtenances in good shape. Well, that makes it even more reasonable. Right, which we've pled both, but that's a part of the case as well. But we believe that as the statutory, as it is written here, just like with walkways, just like with seats... The walkways don't have a preamble the way that toilets do. That's true, right? True. I don't believe they were doing... They didn't have working committees when that was passed. All right. Well, let me just see. Are there any other questions? Okay. Thanks to both of you for your helpful briefs and oral arguments. We appreciate it, and thanks for helping us resolve the case. The case will be submitted, and the clerk may call the next case.